## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## CENTRAL DIVISION

**JOHNATHAN S. METCALF**                                                                 **PLAINTIFF**

**V.**                             **NO. 4:21-cv-00435-LPR-ERE**

**KILOLO KIJAKAZI,**
**ACTING COMMISSIONER of the**
**SOCIAL SECURITY ADMINISTRATION**[1]                             **DEFENDANT**

## RECOMMENDED DISPOSITION

This Recommended Disposition ("Recommendation") has been sent to United States District Judge Lee P. Rudofsky. Either party may file written objections to this Recommendation. If objections are filed, they should be specific and should include the factual or legal basis for the objection.

To be considered, objections must be received in the office of the Court Clerk within 14 days of this Recommendation. If no objections are filed, Judge Rudofsky can adopt this Recommendation without independently reviewing the record. By not objecting, parties may also waive the right to appeal questions of fact.

**I.     Introduction:**

On February 25, 2019, Johnathan S. Metcalf filed a Title II application for disability and disability insurance benefits, alleging disability beginning on February

---

[1] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration and is substituted as the Defendant in this action. Fed. R. Civ. P. 25(d).

22, 2019. *Tr. at 11*. In a December 29, 2020 written decision, an administrative law judge ("ALJ") denied Mr. Metcalf's application. *Tr. at 20*. The Appeals Council denied Mr. Metcalf's request for review on March 18, 2021. *Tr. at 1-3*. The ALJ's decision is now the final decision of the Commissioner, and Mr. Metcalf has requested judicial review.

For the reasons stated below, this Court should reverse the ALJ's decision and remand for further review.

## II.     The Commissioner's Decision:

At step one of the required five-step analysis, the ALJ found that Mr. Metcalf, who was 41 years old on the alleged onset date of February 22, 2019, had not engaged in substantial gainful activity since that date.[2] *Tr. at 13, 19*. At step two, the ALJ determined that Mr. Metcalf had the following severe impairments: disorder of the neck and back, multiple sclerosis, disorder of the right shoulder, obesity, and mood disorder due to back disorder and multiple sclerosis with mixed features. *Id*.

After finding that Mr. Metcalf's impairments did not meet or equal a listed impairment (*Tr. at 14-15*), the ALJ determined that he had the residual functional

---

[2] The ALJ followed the required five-step analysis to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment (Listing); (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g).

capacity ("RFC") to perform work at the sedentary exertional level, with the following additional limitations: (1) only occasional reaching overhead bilaterally; (2) work where interpersonal contact is routine and tasks involve more than one to two steps, but are not complex; (3) the complexity of work tasks is learned by experience, allowing for several variables and judgment within limits; and (4) the supervision required is little for routine but detailed for non-routine tasks. *Tr. at 15*.

The ALJ next found that Mr. Metcalf was unable to perform any of his past relevant work. *Tr. at 19*. At step five, the ALJ relied on the testimony of a Vocational Expert ("VE") to find that, considering Mr. Metcalf's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that he could perform, such as document preparer, cutter/paster, and addresser. *Tr. at 20*. Therefore, the ALJ found that Mr. Metcalf was not disabled. *Id.*

### III. Discussion:

#### A. Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> Our review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision. Reversal is not warranted, however, merely because substantial evidence would have supported an opposite decision.

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 59 S. Ct. 206, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

### B.  Mr. Metcalf's Arguments on Appeal

Mr. Metcalf contends that the evidence supporting the ALJ's decision to deny benefits is less than substantial. He argues that the ALJ: (1) failed to fully develop the record; (2) made serious errors at step two, by not finding that headaches and PTSD were severe impairments; (3) did not properly evaluate Mr. Metcalf's subjective complaints; and (4) erred in the formulation of the RFC. The Court finds

support for reversal with respect to Mr. Metcalf's headache condition, and the medical summary is therefore limited to a discussion of that impairment.[3]

### C. Medical Summary

Mr. Metcalf suffered from headaches related to cervical stenosis and multiple sclerosis. He also said that he suffered multiple concussions while serving in the military. *Tr. at 42*.

As early as 2016, Mr. Metcalf described frequent and severe headaches to his neurologist, Tonya Phillips, M.D. *Tr. at 519-521*. She diagnosed chronic post-traumatic headache, as well as spinal cord compression. *Id*. In March 2018, Mr. Metcalf had cervical decompression surgery. *Tr. at 539*. In March 2019, Mr. Metcalf filled out a function report, indicating that he suffered from constant headaches and pain in the top of his head, neck, and shoulders. *Tr. at 429-431*. He treated his headaches by taking Tizanidine,[4] which was prescribed by Dr. Phillips. *Id*. His headaches persisted.

Throughout 2020, Mr. Metcalf saw Dr. Phillips, complaining of worsening headaches, which occurred every day and caused blurriness. *Tr. at 1977-2067*. Dr.

---

[3] See *Noerper v. Saul*, 964 F.3d 738, 741 (8th Cir. 2020) ("Although our detailed discussion is targeted, we have considered the claimant's arguments and the record as a whole as to all of [his] impairments and their cumulative effect on [his] limitations.").

[4] Tizanidine is indicated for chronic daily headache, including migraine, migrainous headache, and tension-type headache. https://pubmed.ncbi.nlm.nih.gov/12167135/.

Phillips again diagnosed chronic post-traumatic headache. *Id.* Mr. Metcalf said that BC Powder and Maxalt did not help his symptoms. *Tr. at 1968-1974.* By October 2020, the headaches were so bad that Dr. Phillips increased the dosage of all of Mr. Metcalf's headache medicine and gave him a shot of Aimovig.[5] *Tr. at 1984.* She suggested that Mr. Metcalf get glasses and wear a mouthguard. *Tr. at 99, 1974-1977.*

At the hearing, Mr. Metcalf told the ALJ that his headaches were horrific. *Tr. at 42-57.* He reported extreme sensitivity to light, requiring him to lay down with a pillow over his eyes when experiencing headaches. *Id.* He also testified that he has a short temper, depression, and sleep problems. *Id.* Finally, Mr. Metcalf reported that his routine, daily activities consisted of little more than showering and watching TV. *Id.*

### D. Analysis of Mr. Metcalf's Step Two Argument

Step two of the ALJ's required analysis involves a determination of whether the claimant has an impairment or combination of impairments which is "severe" and meets the duration requirement. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If not, benefits are denied. *Id.* A "severe" impairment significantly limits a claimant's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c); 416.920(c).

---

[5] Aimovig Injection is a calcitonin gene-related peptide receptor antagonist indicated for the preventive treatment of migraine in adults. https://www.rxlist.com/aimovig-drug.htm.

The ALJ did not discuss Mr. Metcalf's complaints of headaches, how they affected his daily life, or the diagnosis or treatment of this condition. The ALJ did not mention headaches at step two. *Tr. at 13*. When the record before the ALJ contains evidence of a history of headaches,[6] with related functional limitations, it is error to not discuss headaches at step two. *Morning v. Kijakazi*, No. 4:20-cv-937-JTR, 2022 U.S. Dist. LEXIS 5647 (E.D. Ark. Jan. 7, 2022); *Vancil v. Saul*, No. 4:19-cv-55-NAB, 2018 U.S. Dist. LEXIS 168344 (E.D. Mo. Sept. 30, 2019); *Skaggs v. Berryhill*, No. 4:16-cv-228-NAB, 2017 U.S. Dist. LEXIS 192337 (E.D. Mo. Nov. 21, 2017). Again, the ALJ did not discuss the headache medical evidence at all, which calls into question his step two finding and requires reversal.

### III. **Conclusion**:

For the reasons stated above, the Court finds that, due to legal error at step two, the ALJ's decision is not supported by substantial evidence.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision be REVERSED and the case be REMANDED for further review.

Dated this 19th day of April, 2022.

_____
UNITED STATES MAGISTRATE JUDGE

---

[6] The Court notes that Mr. Metcalf treated consistently with a specialist (neurologist) and took his headache medications as prescribed.